The case is scheduled for argument this morning. As you probably know, these arguments are recorded and available on our website, and for the benefit of those who later might be listening, when counsel approach the lectern for the argument, I would appreciate it if you would enter an appearance to simply state your name clearly and the party you represent, and that will identify yourselves on the tape, and also help us in the pronunciation of your names. So with that, we will start with the first case, 2007-5049, Bair v. United States. May I please the court, counsel? My name is Bryce Wilcox. I represent the appellants, who are 46 former sugar beet farmers from Central Washington State. My clients are here before this court seeking compensation for the taking of their state law processor liens by the federal government, whose actions rendered the value of my clients' liens worthless. The sole issue before the court on appeal is whether the so-called super-priority lien statute, 7 U.S.C. 7484-D, effectuated a taking in this case under the Fifth Amendment that warrants payment of just compensation. Do you agree that the federal government has the authority to limit the scope of state legal? Limit the scope of state legal? Yes, I do. So your theory is that every time the federal government does that, it results in a taking, whether the lien limitation provision existed before the state lien was created or afterwards. No, Your Honor. What my client's position is, is if the regulation of that lien effectuates or renders the lien completely valueless, then you have a taking. If the federal government does something less than that, then I can go into a partial regulatory taking analysis, which balances the factors set forth under the law. But Lucas, the case on which you relied so heavily, makes clear that there's a difference between personal property and real property. And personal property, at least from the point of view of state law, would be a personal property violation when you restrict it. Yes, I believe that is correct, Your Honor. And so if this restriction had been imposed by state law, there wouldn't be any problem, right? Correct. So the only question is whether the federal law somehow necessarily achieves a taking every time there is a limitation on the scope of the state lien, right? I would only disagree with Your Honor to the extent that you indicated it was every time there's a restriction. I do believe that the federal government may restrict the state property right through appropriate regulatory measures. It's when those restrictions go so far that it completely eliminates the property interest, that is when you have the takings issue, and that is what occurred in this case. It wasn't just a restriction, per se. It was taking the sole stick, if you will, out of the bundle of rights. That is a lien priority. That's the only thing that the lien has value for. But the enactment of the super priority statute didn't render the state lien's value, right? In this case, it did, Your Honor. The enactment of the statute. No, not the enactment of the statute. It was the application of the statute in this case. And the creation of the state federal super priority lien here didn't in and of itself render the state lien's value, right? It just made it subject to the federal. Correct. And in this case, if, and this is a fact-specific case, if there were sufficient assets, hypothetically, to pay the government's super priority lien and pay in part my clients, I mean, I think it would be a different analysis under a different constitutional test. So it wasn't the creation of the federal lien here that rendered the state lien's value. It was only the ultimate enforcement of the federal lien. I think that's correct, Your Honor. As we focus on the two-part test utilized by this circuit in determining the taking, which is, first, the creation of a compensable property interest, and second, whether there is a taking, this case centers on the first issue, whether there is a compensable property interest. And as indicated in our submittals, property interests are created and defined by state law. The Constitution does not create property interests. It protects property interests. Counsel, why doesn't the fact that a statute existed in your client's lien affect whether or not they have a compensable property interest? I would think you'd have a much more compelling case. I'm sure you'd probably agree. You'd have an easier case, wouldn't you, if the statute came after, really? Correct, Your Honor. So why doesn't the fact that it came first affect the extent of the property interest in your client? The proposition that we are advancing in this case is that the federal government simply lacks the authority to legislatively redefine state-created property rights. So the fact that the federal government, at some prior point in time, by decree, dictates that a state lien, in this case, in the application is valueless because it takes the lien priority away from it. Well, they didn't decree that the lien was valueless, but they decreed that the federal, the CCC would be the priority. Correct. By super-priority, of course, what the federal government is saying is no matter what lien is out there, what sort of prior position that lien had vis-a-vis the government's lien, we're going to trump that. And unlike other property rights that have multiple sticks in the bundle, if you will, the lien only has one real value to it, one stick, and that's lien priority. If you don't have your priority as a creditor, then you really don't have anything. Well, I mean, you say that, but that's because you're assuming the facts of this case where the lien that the CCC had basically had to recoup all of the property right. But, I mean, I imagine in some cases, and maybe I'm wrong, isn't it in some cases where a CCC gets its money back and then the subsequent liens, or not necessarily subsequent time, but subsequent priority liens, also get either their money back or some share thereof? Isn't that also something that could happen? It's certainly possible. And as I indicated, I believe that if that situation arose, we would not have a categorical taking under the Lucas analysis where there's all value in the property is rendered worthless. We'd have a partial regulatory taking where some use, some restriction in value, was created by the prior government enactment, which then requires the multi-factor test that the courts have articulated. Well, here, your lien was not categorically rendered valueless. It was simply an adjustment of priority. Your Honor, the effect of the adjustment of priority is what you're complaining about. Potentially, that's simply a result of the economic conditions that surrounded this situation at the time, not as a result of the statute. I think, Your Honor, if we look at the other lien-taking cases, Armstrong, Sheldon, Murray, and that more financial, in the lien situation, if there were economic circumstances driving the issue, because that's where liens only become values, where the entity to whom the debt, or who owes the debt, can't pay. And so, almost by definition, you will have that circumstance arise. But Armstrong is distinguished. That was a contract, a contract where there are different circumstances that came into play. And, of course, I think the Armstrong case is clearly distinguishable from this one where you have a statute that simply readjusts the priority of liens. And in Armstrong, you had a government action requiring title to this shift that, because of sovereign immunity, the lien holder's right to enforce that seems to be completely different circumstances. I would agree with Your Honor that Armstrong is factually distinguishable. The relevance of Armstrong would be into the economic circumstances. That's what drove the taking in that case. That is to say, if there was not an economic crisis, if you will, you would not have had a lien issue because the subcontractor, theoretically, would have been paid by the general contractor, hence there would have been no taking. So it was the economic circumstance of the business transaction that created, if you will, the taking circumstance. But wasn't it the fact that the sovereign immunity prevented the lien holder from enforcing it?  It had something to do with economics. Well, I think my point, Your Honor, is that if it wasn't for the economic situation, that is, the general contractor not having the money, that's why the government came and took the shifts back, is because they were having problems under their contract with the government. And by basically repossessing, if you will, the shifts, now the subcontractor, who had a materialness lien, could not go and enforce that lien as it would otherwise be able to. So in that sense, Your Honor, it was the economics that really were underpinning the situation. And I think that was the same in the other cases as well. But here we have a situation where at the time the sugar beets were submitted for processing, which gives rise to the state lien for example. Yes. Your clients either knew, or they should have known, if they'd done their research, that there was a possibility that that lien would be subordinate to a later arising federal lien that was coming about as a result of a federal loan. That was a record, correct. Right. So why aren't they bound by that? Why isn't that in effect a background principle that existed at the time the property was acquired? And I'm surprised that the news cited our Commonwealth Edison case. But part of that decision of Commonwealth Edison says that where you're dealing with personal property, the question of what the background principles are, what the expectations are, is what the expectations are at the time the property was acquired. So here at the time the property was acquired, there's this federal rule about super priorities. Why didn't they acquire their state lien subject to that existing background principle imposed by federal law? Your Honor, I believe that that issue was addressed by this court in its unbonded decision in pre-salt, where the government attempted in that case to interject the history of the federal law, that is to say, the law related to federal law. Yeah, but it's a real property case. And even with this makes it clear that personal property is very different. We don't really have to address in this case the question of what the real property situation would be when you're dealing with personal property. And even Lucas says that in a personal property situation, that the same as the rule about capital or payments doesn't apply. Right. Well, Your Honor, I would respectfully disagree in the sense that I don't believe that the background principle analysis articulated in Lucas is clarified by pre-salt and the applies to real property. That's my client's position is that the analysis of the real property cases and the categorical takings is equally applicable to the personal property arena. And I would at least point to the- Well, that's a problem, because Lucas says the exact opposite, right? I do not believe so, Your Honor, that it says the exact opposite. I certainly acknowledge there's differences between real property and personal property. But what I wanted to point out to, and I know I'm in my rebuttal time, so that in Nolan versus California Postal Commission, that was a constructive notice real property case. And Justice Brennan, in his dissent in Nolan, had pointed to this issue about the agency having imposed similar restrictions on the 43 of the prior neighbors. In other words, the Nolans, according to the dissent, had noticed that they were taking a property, this real property, subject to these development conditions. Justice Brennan relied upon Monsanto, which is a case discussed in our brief, which was a trade secret case, not a real property case, utilizing the same logic advanced by the government in this case. And the majority then responding to Justice Brennan's dissent characterized Justice Brennan's statement as a peculiar proposition that a unilateral claim of entitlement by the government can alter property rights. And I think what's noteworthy, Your Honor, is that the majority in Nolan did not make the distinction between real property versus personal property when addressing Justice Brennan's comments. Yeah, but in Monsanto, the court rejected the claim for taking with respect to information that was submitted after the federal rule was changed, right? It did, Your Honor, because the court found that there was a valuable exchange where Monsanto voluntarily disclosed its trade secrets in exchange for protection under federal law, which, of course, in our case, my clients wanted to engage in this valuable exchange where the super priority would be given in exchange for payment. All right. You have pretty much consumed your rebuttal time, but I will give you two minutes. The other side has finished, so thank you. You can go up here. I'm sorry. This is Mager, Your Honor. Mager, Your Honor. Thank you. Good morning. Good morning. Stephen Mager. We'll give you an extra two minutes just to balance it out. Stephen Mager from the Department of Justice representing the United States, Your Honor. May it please the court? In this case, plaintiffs and the critical issue in this case is whether or not plaintiffs possess a compensable property interest. Engaging in antecedent inquiry in this case and attempting to define what property the plaintiffs possess with regards to their lien, as a matter of law, plaintiffs did not possess a property interest above the government in the proceeds of the sugar. If the statute was enacted after their lien, would that have made a difference? Would the government be arguing then, or would they have to guess that it was a take? Well, Your Honor, I don't know hypothetically what the government's position would be, but I can say that it would be quite a difference from this case. It seems that the case law in those cases, you'd run straight into the difficulty that the Supreme Court talks about in United States versus Securities and Industrial Bank when they're determining whether to apply 552 retroactively or prospectively. If you're applying it in a sense where you're going back retroactively, the Supreme Court notes that there may be a takings issue there. So I think if this statute had, if this was a lien that had already arisen and the sugar beet super priority statute had been passed and those rules had been passed, then the government would, I don't think, be able to argue that there was no takings in that case. I think it's a very different case in those. Because in this case, when plaintiff's liens arose as a matter of law, arising as a matter of law, they were already subject to the super priority statute. They were not acquiring a full priority lien. They were acquiring a lien that had a specific place and a specific position with regards to other liens. It's as though, by way of a basic analogy, if you go to an airport today, there are various lines. There's a line for frequent flyers, and there's a regular one. Having a position in the regular line doesn't mean you have a position in the frequent flyer line with regards to getting to a ticketing agent. It's a rather simple analogy, but it does generally describe the situation here. In this case, not only are the 522 cases, such as in Ray Thompson and Ray Leck, as we described in our brief. I don't follow how the two line analogy really works. Isn't it more like you're in a line and the government butts in front of you? No, because the government is in a separate line. Maybe I tend to fly out of smaller airports where there's only one ticketing agent. But the government has, you're both trying to get to the same destination. You're both trying to get on a plane. But the government, because it has, in this case, access on the frequent flyer line, it's not butting in front of you. In fact, there were, with regards to this case, plaintiffs, there were individuals in their line in front of them also who had acquired their position as a matter of law with regards to where their liens stood. The government had what was a different kind of lien, a super-priority lien, which took precedence over all sorts of other liens. So I don't think it's the government. But why are you fighting my analogy? Why don't you just say something along the lines of, yes, the government butted in front, but there was a sign at the beginning of the line that said the government may butt in front any time it comes along. Well, I don't agree with the analogy or that way of describing the analogy. But even if that is the case, you could say that the government had a right to butt in front of you as a matter of law when you got to the airport from the outset. So, I mean, the analogy isn't necessarily describing it in a different way isn't fatal to that case, but I would describe it a little differently. Plaintiffs further describe their takings as categorical taking. There are additional issues in this regard, which I'll briefly address. However, I will note that whether or not this is a categorical or regulatory taking, the question of the nature of the property interest is dispositive in this case. Which is a categorical one? Well, it would appear, in our view, to be that they're alleging a categorical taking. It would certainly be. In fact, they state so in their briefs, effectively. Yeah, they say that the enforcement of the leak creates a categorical taking, but not the creation of it. In your view, is that a categorical taking? In our view, well, it has difficulty placing itself in the categorical taking category. Because what the government is doing here is enforcing, assuming we have a pre-existing right, it's simply enforcing a pre-existing interest. And it's set a law that when you're talking about takings, it's not the action of the government with regards to a security interest. That's sort of proprietary nature, not sovereign in nature. And if it were, I mean, we're concerned with the nature of the government's interest, which would be sovereign in nature. I think the more appropriate for this case is whether or not the statute was a taking, whether the super-priority statute was a taking, not merely the enforcement of the government's right. If the government had a right pursuant to the statute to enforce its priority, the enforcement of that statute was not a taking at all, in our view. And the cases which point of sight are generally distinguishable. I specifically disagree with you. The effect of the government's enforcement of the leak, in this case, extinguished the entire underlying property of the grower's leak. And they rendered that leak entirely worthless. Does that mean this is a categorical taking? Well, I think analyzing it as a categorical taking makes a great sense. But we didn't distinguish all of the value of their leak. They still had their leak priority. It's just there were not enough proceeds to satisfy the leak. There was not enough proceeds to satisfy all of the governments. If we go to the facts of this case, plaintiffs received 50% They still had their leak, but they had nothing, no underlying property. They had nothing left to satisfy the leak. But the question of whether or not there is a taking doesn't depend upon whether or not there is enough money in the bank to worry about. We get that from branch versus the United States. What is the government action here that we should be focusing on? Is it the enactment of the statute? Is it the commission of the leak by the loan, the guaranteed loan? Or is it the enforcement? What's the relevant government action? The creation of the statute of crimes, which established the leak priority, because subsequent the government is merely enforcing its right to its leak. It's, again, the case. If we're focusing upon the question of the government actually enforcing its right, we run into the problems that are detailed in branch versus the United States, where ultimately the constitutionality of the government's action comes to depend upon the happenstance of the financial condition of the sugar beet processor. So we would state that the relevant portion to focus upon is the question of the new priority statute. And that statute, again, only established priority. It did not establish or did not categorically take any property, simply put the government in its position. And it certainly did not establish or affect any property in existence at the time, at least at issue in this case. Unless there are any further questions. For these reasons, the reason is set forth in our brief in respect to the request for a firm decision in the Court of Federal Claims. Thank you. Thank you very much. Mr. Wilcox.   by Mr. Wilcox. Two points if I may. First, with respect to the issue of Lucas and whether the test therein would be limited to the real property setting, I would like to ask the court consider the portion of the Lucas decision at least at page 1030 of the official site, where the court recites in part the rule that's announced and then cites to Monsanto as a case. And I think at least inferentially that would suggest that although there is certainly a valid and real distinction between personal and real property, there is not necessarily in the Supreme Court's mind a reason to apply a different rule. And of course the Supreme Court has yet to resolve that question as to what is the appropriate rule in the categorical personal property arena. There is additional instructive language, I believe, in the United States v. Security Industrial Bank case in the 1982 Supreme Court decision where the court held that the, quote, bundle of rights which accrues to a secured party is obviously smaller than that which accrues to an owner in fee simple, but the government cites no cases supporting the proposition that differences such as these relegate the secured party's interest to something less than property. Again, it does not directly address the court's question that I believe frames the issue as to whether or not there should be a different standard to personal property. In closing, and I would just ask the court to look at the Federal Court of Claims decision cited in our brief, Store Safe Redlands, where the Federal Court of Claims engages in an analogy about what would happen if the government was allowed to prospectively limit property rights to real property rights. And I would take that one step further quickly by the hypothetical of the government prospectively stating that automobiles were no longer a property just as a matter of federal legislation. And then after everyone sold their car one time, would then the individual owners of cars be able to bring a takings claim under that statute? Do you think that if you were to succeed in this case that the government would continue to make loans under these circumstances? I don't know, Your Honor, to be honest. I do not know. I think that I didn't get time to go into the history of the Farm Act and my argument we did in the brief, but I believe that there was a legislative issue that created this situation where we had a just compensation clause in the statute when it was created, when the super-priority statute was created. That just compensation clause, 1421 of the 7 U.S.C., was suspended for the crop years 1996 to 2002. If it wasn't for that suspension, I wouldn't be here today because the super-priority had with it a compensatory clause that Congress decided to suspend.  Thank you, Your Honor.